**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Megan Castillo, et al., | No. CV-24-02279-PHX-SMB |
| Plaintiffs, | **ORDER** |
| v. | |
| Yuma County Board of Supervisors, et al., | |
| Defendants. | |

Before the Court are Defendant Jennifer Andjelich's Partial Motion to Dismiss for Failure to State a Claim (Doc. 130) and Defendant Jonquil Michael's Motion to Dismiss for Failure to State a Claim (Doc. 180) (collectively, the "Motions"). The Motions have been fully briefed and, for the reasons that follow, the Court **grants** the Motions.

## I.  BACKGROUND

Under Arizona law, Yuma County is required to "provide directly or by contract the services of a screening agency and an evaluation agency." Ariz. Rev. Stat. § 36-545.06(A); (Doc. 50 at 6). Accordingly, the Yuma County Board of Supervisors (the "Board"); contracted with Community Bridges Inc. ("CBI"), a non-profit behavioral healthcare organization, to provide these services. (Doc. 50 at 4, 6). This case arises from CBI's involuntary psychiatric evaluation of Plaintiff Megan Castillo ("Castillo"). (*Id.* at 12–13.) In response, Castillo and her husband Scott Castillo ("Scott") (collectively, "Plaintiffs") sued: the Board; CBI; CBI CEO John Hogeboom; and CBI employees Jon Caldwell,

Carrasco, Michael, and Andjelich (collectively, the "CBI Employees"). (*Id.* at 1–2).[1] Plaintiffs bring a panoply of state and federal claims. The Motions only concern Plaintiffs' 42 U.S.C. § 1983 claims.

Shelby, Castillo's adult daughter, initiated her mother's psychiatric evaluation. (*Id.* at 11.) Shelby filed an emergency application with CBI to have Castillo involuntarily evaluated after an altercation took place between her and Castillo.[2] (*Id.*) Defendant Carrasco, CBI's Admission Coordinator, assisted Shelby in this process. (*Id.*) Defendant Michael and Defendant Carrasco reviewed the application. (*Id.* at 7, 18.) Defendant Carrasco then executed the application, resulting in police transporting Castillo to CBI for psychiatric evaluation. (*Id.* at 12.) Once Castillo arrived at CBI, she was placed under a "23-hour Crisis" detention protocol. (*Id.* at 13.)

At the end of the detention protocol, Defendant Andjelich ordered Castillo to be transferred to inpatient status. (*Id.* at 19.) From there, Castillo alleges CBI kept her for multiple days and subjected her "to several involuntary and medical assessments." (*Id.* at 22.) Based on the information gathered, Defendant Caldwell, CBI's Medical Director, petitioned a court to order Castillo to undergo further evaluation. (*Id.*) An Arizona court granted Defendant Caldwell's petition, resulting in Castillo's continued detention. (*Id.* at 23.)

## II.   LEGAL STANDARD

To survive a motion for failure to state a claim under Federal Rule of Civil Procedure ("Rule") 12(b)(6), a complaint must meet the requirements of Rule 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds

---

[1] Castillo also sued Yuma City Council, Richard Fuller, and Christopher Valdez, each of which have been dismissed pursuant to stipulation. (Doc. 50 at 1–2, Doc. 80, Doc. 175).

[2] Under Arizona law, a person can be admitted to a screening or evaluation agency pursuant to either an "application for emergency admission," Ariz. Rev. Stat. § 36-524(A) or an application for "court-ordered evaluation," Ariz. Rev. Stat. § 36-520(A). Here, it appears that CBI admitted Castillo pursuant to an application for emergency admission and then evaluated her pursuant to a court-ordered evaluation. (Doc. 50 at 23.) An exhaustive recapitulation of Arizona's evaluation scheme outlined in sections 36-520 to 531 of the Arizona Revised Statutes is not necessary for the present Order.

upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). This notice exists if the pleader sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint that sets forth a cognizable legal theory will survive a motion to dismiss if it contains sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Plausibility does not equal "probability," but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility . . . .'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In ruling on a Rule 12(b)(6) motion to dismiss, the well-pleaded factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998). A court ordinarily may not consider evidence outside the pleadings when ruling on a Rule 12(b)(6) motion to dismiss. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908.

## III. DISCUSSION

Defendants Andjelich and Michael move to dismiss Plaintiffs' First Amended Complaint ("FAC") pursuant to Rule 12(b)(6). (Doc. 130 at 1; Doc. 180 at 1.) The Court addresses each Motion in turn.

### A. Defendant Andjelich's Motion to Dismiss

The Court first considers Defendant Andjelich's Motion to Dismiss for Failure to State a Claim (Doc. 130). The Court finds that Plaintiffs have not plausibly alleged that Defendant Andjelich is a state actor as required for liability under § 1983. In short, Defendant Andjelich is not alleged have been "clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988)). Accordingly, and for the following reasons, the Court grants Defendant Andjelich's Motion.

#### 1. *Background*

Defendant Andjelich ordered Castillo to be transferred to inpatient status after her initial detention. (*Id.* at 5, 19.) Plaintiffs allege that Defendant Andjelich, while acting under the color of state law, failed to make the requisite findings to justify Castillo's continued involuntary hospitalization. (*Id.* at 19.) Plaintiffs further allege that Defendant Andjelich knew that Castillo was being illegally detained because the required investigations and examinations had not been performed prior to her detention. (*Id.*) Additionally, Plaintiffs posit that Defendant Andjelich, acting pursuant to CBI policies and procedures, ordered that blood and fluid be extracted from Castillo and that she be administered psychotropic medication. (*Id.* at 20.)

As relevant to the Motion, Plaintiffs allege that Defendant Andjelich violated Castillo's Fourth and Fourteenth Amendment rights by unconstitutionally searching and seizing her, depriving her of due process, and depriving her of familial association.[3] (*Id.* at 19.) Plaintiffs further allege that Defendant Andjelich violated Scott's Fourteenth Amendment rights by depriving him of familial association. (*Id.* at 27.) Plaintiffs bring these claims under 42 U.S.C. § 1983. (*Id.* at 5.)

---

[3] Plaintiffs also bring state law claims against Defendant Andjelich. (Doc. 50 at 25). However, Defendant Andjelich does not seek dismissal of those claims. (Doc. 179 at 2.)

- 4 -

2. *Section 1983 Claims*

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law." "The ultimate issue in determining whether a person is subject to suit under § 1983 is the same question posed in cases arising under the Fourteenth Amendment: is the alleged infringement of federal rights fairly attributable to the government?" *Pasadena Republican Club v. W. Just. Ctr.*, 985 F.3d 1161, 1167 (9th Cir. 2021) (citation modified).

To state a § 1983 claim, "a plaintiff must 'plead that (1) the defendants acted under color of state law and (2) deprived plaintiff of rights secured by the Constitution or federal statutes.'" *WMX Techs., Inc. v. Miller*, 197 F.3d 367, 372 (9th Cir. 1999) (en banc) (quoting *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986)). Here, the parties do not dispute that Defendant Andjelich is a private party. The dispositive issue, then, is whether Plaintiffs sufficiently pleaded that Defendant Andjelich acted under the color of state law.

"The determination of whether a nominally private person or corporation acts under color of state law 'is a matter of normative judgment, and the criteria lack rigid simplicity.'" *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 747 (9th Cir. 2020) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)). Importantly, "no one fact can function as a necessary condition across the board for finding state action; nor is any set of circumstances absolutely sufficient, for there may be some countervailing reason against attributing activity to the government." *Brentwood*, 531 U.S. at 295–96. Nevertheless, for a private party to be a state actor, they "must meet (1) the state policy requirement, and (2) the state actor requirement." *Wright v. Serv. Emps. Int'l Union Loc. 503*, 48 F.4th 1112, 1121 (9th Cir. 2022).

At bottom, Defendant Andjelich contends that she is a private individual that has not otherwise become a government actor through her involvement in CBI. (*Id.* at 7.) In

the alternative, Defendant Andjelich argues she otherwise enjoys qualified immunity because she did not deprive Plaintiffs of a clearly established constitutional right. (*Id.* at 11.) Because the Court finds that Defendant Andjelich is not a state actor, it does not address this alternate argument.

### a. State Policy Requirement

The state policy requirement is easily satisfied in this case. "Under the state policy requirement, [courts] consider whether the claimed constitutional deprivation resulted from the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible." *Id.* (citation modified). Under Arizona law, each county has a duty to "provide directly *or by contract* the services of a screening agency and an evaluation agency." § 36-545.06(A) (emphasis added); *see Cohen v. Maricopa County*, 263 P.3d 61, 64 (Ariz. Ct. App. 2011) (noting that the Arizona Supreme Court "found that, pursuant to § 36-545.06(A), Yuma County had a duty to provide screening and evaluation services to involuntarily detained patients"). Furthermore, mental health screening and evaluation services are created, and heavily regulated, under Arizona law. *See* Ariz. Rev. Stat. § 36-501 *et seq.* Here, Yuma County contracted with CBI to satisfy its statutory duty to provide screening and evaluation services. (Doc. 50 at 6.) Additionally, Plaintiffs sufficiently allege that Defendant Andjelich—pursuant to Arizona law—transferred Castillo to inpatient status. (*Id.* at 1, 9.) Accordingly, the Court finds that Plaintiffs have plausibly stated that Defendant Andjelich acted pursuant to state policy. Thus, the Court turns to the more onerous state actor requirement.

### b. State Actor Requirement

"[T]he Supreme Court has identified four tests for when a private party 'may fairly be said to be a state actor'": (1) the public function test, (2) the joint action test, (3) the state compulsion test, and (4) the nexus test." *Children's Health Def. v. Meta Platforms, Inc.*, 112 F.4th 742, 755 (9th Cir. 2024) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)). The public function tests asks whether private parties have been

"endowed by the State with powers or functions" that are "both traditionally and exclusively governmental." *Lee v. Katz*, 276 F.3d 550, 554–55 (9th Cir. 2002) (quoting *Evans v. Newton*, 382 U.S. 296, 299 (1966)). The joint action test asks whether a private party has participated or conspired with the state such that their actions are substantially and inextricably intertwined with those of the government. *See Solomon v. L.V. Metro. Police Dep't*, 441 F. Supp. 3d 1090, 1098 (D. Nev. 2020). The state compulsion test asks "whether the coercive influence or 'significant encouragement' of the state effectively converts a private action into a government action." *Kirtley v. Rainey*, 326 F.3d 1088, 1094 (9th Cir. 2003).[4] Finally, the nexus test asks whether "there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Brentwood*, 531 U.S. at 295 (citation modified).

"Satisfaction of any one test is sufficient to find state action, so long as no countervailing factor exists." *Kirtley*, 326 F.3d at 1092. Regardless of which test is used, "the inquiry is always whether the defendant has exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Rawson*, 975 F.3d at 748 (quotation marks omitted) (quoting *West*, 487 U.S. at 49).

Lastly, as a general principle, "private doctors and hospitals are not considered to be state actors." *Morrison v. Billings Clinic*, 703 F. Supp. 3d 1245, 1251 (D. Mont. 2023); *see Briley v. California*, 564 F.2d 849, 855–56 (9th Cir. 1977) ("Similarly, in this and other circuits, private hospitals and physicians have consistently been dismissed from § 1983 actions for failing to come within the color of state law requirement of this section."). "However, it is the physician's function within the state system, not his private-contractor status, that determines whether his conduct could fairly be attributed to the State." *Scianna v. Arizona*, No. CV-21-01444-PHX-DJH, 2025 WL 963600, at *9 (D. Ariz. Mar. 31, 2025) (citation modified).

---

[4] Plaintiffs do not argue that the state compulsion test is implicated here. Nonetheless, there is no allegation that Castillo was committed pursuant to any "coercive influence" or "significant encouragement" of the State. *See Kirtley*, 325 F.3d at 1094.

- 7 -

i.  Public Function Test

Plaintiffs contend that Defendant Andjelich is a state actor under the public function test, arguing: "The power to involuntarily confine, evaluate and treat citizens whose mental disorders render them dangerous to themselves or others is that of the state under the police power and the *parens patriae* power.  These are traditionally and exclusively governmental powers." (Doc. 162 at 8.) In support, Plaintiffs cite *Addington v. Texas*, 441 U.S. 418, 426 (1979) where the Supreme Court noted:

> The state has a legitimate interest under its *parens patriae* powers in providing care to its citizens who are unable because of emotional disorders to care for themselves; the state also has authority under its police power to protect the community from the dangerous tendencies of some who are mentally ill.

However, *Addington* does not bear the weight Plaintiffs place on it.  *Addington* merely supports the proposition that states have an *interest* in involuntary commitment.  It does not suggest that involuntary commitment is *exclusively* a governmental function, as required under the public function test.  *See Kirtley*, 326 F.3d at 1093.

"[C]ountless courts have previously assessed the involuntary commitment of a patient by a private hospital and have consistently determined that the public function test is inapt." *Douglass v. HonorHealth*, No. CV-24-00928-PHX-MTL, 2024 WL 4475093, at *3 (D. Ariz. Oct. 11, 2024) (citing cases); *see Jensen v. Lane County*, 222 F.3d 570, 574 (9th Cir. 2000) ("When purely private actors obtain the help of a private physician to bring about the involuntary admission and detention of an allegedly mentally ill person for psychiatric examination, courts that have addressed this scenario in the § 1983 context have held that there is no state action."); *Harvey v. Harvey*, 949 F.2d 1127, 1131 (11th Cir. 1992) ("We are unwilling to categorize involuntary commitment in Georgia as a function so reserved to the state that action under the commitment statute transforms a private actor into a state actor.").  Because involuntary commitment is not an exclusive and traditional government function, the public function test is not satisfied.  Thus, Defendant Andjelich is not a state actor under the public function test.

ii. Joint Action and Nexus Tests

Plaintiffs next contend that Defendant Andjelich is a state actor under the joint action and nexus tests.[5]  "In order to be considered state action, when a private actor participates in a governmental act, the court must find a sufficiently close nexus between the state and the private actor 'so that the action of the latter may be fairly treated as that of the State itself.'" *Jensen*, 222 F.3d at 575 (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 350 (1974)).

Plaintiffs rely heavily on the fact that Yuma County contracted with CBI to provide screening and evaluation services.  (Doc. 162 at 11.)  While a contractual relationship might contribute to a close nexus between a state and private actor, it is—by itself—insufficient to evidence substantial intertwinement between the State and CBI. *See Belgau v. Inslee*, 975 F.3d 940, 948 (9th Cir. 2020) ("A merely contractual relationship between the government and the non-governmental party does not support joint action; there must be a symbiotic relationship of mutual benefit and substantial degree of cooperative action." (citation modified)); *Jensen*, 222 F.3d at 575 (noting that "substantial funding for private actors [is] not sufficient to transform the party's conduct into state action").  Accordingly, the CBI contract with Yuma County is insufficient to render CBI a state actor.

Next, it is immaterial that Arizona law requires Yuma County to either "provide directly or by contract the services of a screening agency and an evaluation agency." § 36-545.06(A).  As noted, civil commitment is not inherently a government function. The mere fact that the State might regulate—or ensure the provision of—psychiatric health services does not, by itself, make evaluation agencies bedfellows of the State.  As the Supreme Court noted: "Even extensive regulation by the government does not transform the actions of the regulated entity into those of the government."  *S.F. Arts & Athletics,*

---

[5] Although the joint action and nexus tests are cited as separate tests, courts have combined them.  *See, e.g.*, *Jensen*, 222 F.3d at 574; *Doe v. Rosenberg*, 996 F. Supp. 343, 352 (S.D.N.Y. 1998); *Rawson*, 975 F.3d 748 (applying a six-factor test).  This approach is understandable as both tests essentially measure the interrelation between actions of the State and the private party. *See Doe*, 996 F. Supp. at 349. Accordingly, the Court evaluates them together.

*Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 544 (1987); *see Jackson*, 419 U.S. at 354 ("Doctors, optometrists, [and] lawyers . . . are all in regulated businesses, providing arguably essential goods and services, 'affected with a public interest.' We do not believe that such a status converts their every action, absent more, into that of the State."). Additionally Yuma County hiring CBI hardly makes Yuma County a "joint participant" in CBI's enterprise. *See Jackson*, 419 U.S. at 358 (noting that a "privately owned corporation" is not intertwined with the state where "[i]t alone is responsible for the provision of [services] to its customers" despite being subject to "extensive regulation by the State").

Critically, Plaintiffs fail to demonstrate that CBI and Yuma County are significantly intertwined. Plaintiffs contend that there is a "substantial degree of cooperative action" between CBI and the Yuma County. (Doc. 162 at 11.) Plaintiffs chiefly rely on *Rawson* and *Jensen*, two Ninth Circuit cases involving involuntary commitment. However, both cases concern a level of entwinement beyond what is alleged here. Turning to *Jensen*, the Court relies on *Rawson*'s recapitulation of the facts of that case:

> *Jensen* concerned a private contract psychiatrist in Oregon who participated in the initial emergency detention of the plaintiff for mental health evaluation, and whom we ultimately concluded was acting under color of state law under the close nexus/joint action test. The plaintiff's detention had been initiated by police and was first reviewed by a county mental health specialist, who forwarded the case to the defendant contract psychiatrist (Dr. Robbins) and a second county mental health specialist. Without personally examining the plaintiff, Dr. Robbins signed an order authorizing up to five days of detention for evaluation. The plaintiff would be held at the county psychiatric hospital, for which Dr. Robbins' private practice group helped develop the mental health policies. Based on his subsequent personal examinations, Dr. Robbins would have released the plaintiff by day three. However, the plaintiff was held the maximum five days until the second county mental health specialist completed his investigation and concluded that there was insufficient evidence upon which to pursue further detention.

*Rawson*, 975 F.3d at 749–50 (citations omitted) (citing *Jensen*, 222 F.3d at 572–576). Accordingly, the *Jensen* court found that "Dr. Robbins and the County through its employees have undertaken a complex and deeply intertwined process of evaluating and

- 10 -

detaining individuals." *Jensen*, 222 F.3d at 575. In particular, the Court noted that "County employees initiate the evaluation process, there is significant consultation with and among the various mental health professionals (including both [private] psychiatrists and county crisis workers), and [private psychiatrists help] develop and maintain the mental health policies of [the County hospital]." *Id*.

Plaintiffs fail to allege a similar level of intertwinement between CBI and the State. Plaintiffs posit that joint action exists here because CBI made use of state procedures with the "overt, significant, assistance of state officials." (Doc. 162 at 11.) However, Plaintiffs do not allege any facts like those present in *Jensen*. Here, Shelby, Castillo's daughter, initiated the evaluation process, not Yuma County personnel. Similarly, CBI employees evaluated Castillo, not Yuma County personnel and police. Additionally, Plaintiffs otherwise fail to allege that Yuma County personnel: developed or maintained CBI's policies; engaged in significant consultation with any CBI employees; or otherwise assisted CBI in conducting its evaluation services generally. Much less do Plaintiffs allege that CBI staff consulted with State employees in any capacity regarding Castillo's commitment in particular. Finally, Castillo is not alleged to have been held at a Yuma county hospital.

Similarly, *Rawson*—another civil commitment case—involved more significant intertwinement between the state and the private actor than what is present here. In that case, a county prosecutor played "an outsized role in the duration of [plaintiff's detention]." 975 F.3d at 754. Additionally, a county employee "evaluated [the plaintiff] and filed a petition in state court for a 72-hour involuntary commitment. *Id.* at 745. Here, a private citizen sought Castillo's commitment, which was then processed by CBI employees. Additionally, Plaintiffs do not allege that CBI "operate[d] on public property or in public facilities," as was the case in *Rawson*. *Id.* at 756.

The only "overt, significant, assistance of state officials" that Plaintiffs point to is the involvement of police and the state court. (Doc. 162 at 11.) In particular, Plaintiffs argue that Castillo's initial seizure was the result of "significant assistance of law enforcement pursuant to power granted CBI under [its agreement with the Board]." (*Id.*)

- 11 -

Additionally, Plaintiffs contend that "the entire process of securing the Superior Court's Order was a coordinated effort between CBI and the Yuma County Attorney." (*Id.*)

While Plaintiffs' contentions are not wholly unavailing, they do not plausibly suggest that Defendant Andjelich is a state actor. Two of Plaintiffs' arguments are quickly dispensed with. First, Plaintiffs' Complaint makes no reference to the Yuma County Attorney or any other Yuma County prosecutor. Second, CBI's use of law enforcement is not a power granted to CBI under its agreement with the Board. Instead, CBI is granted that power under state law: "If the person to be admitted is not already present at the evaluation agency and if the admitting officer . . . has reasonable cause to believe that an emergency examination is necessary, the admitting officer may advise [police] that sufficient grounds exist to take the person into custody and to transport the person to the evaluation agency." § 36-524(E).

Plaintiffs remaining arguments pertaining to the police and the court are otherwise unavailing. Beginning with the state court's involvement, the court in *Rawson* acknowledged that "private parties may act under color of state law when the state authorized or approved the private parties' actions." 975 F.3d at 754. As applied in *Rawson,* the court found that state authorization existed where a court issued the required order for a private medical provider to detain and treat a patient past an "initial 72-hour emergency evaluation period." *Id.* at 752. However, the *Rawson* court found that state authorization merely "weighs in favor of a finding of state action," not that state authorization is independently sufficient to find state action. *See id.* at 755. Indeed, other courts have expressly acknowledged that "[u]se of the courts by private parties does not constitute an act under color of state law." *Harvey*, 949 F.2d at 1133; *Doe*, 996 F. Supp. at 352–53 (noting that the "nexus/joint action test" is not met where the State "in no way influences the decisions to commit"); *Belgau*, 975 F.3d at 949 ("The private party cannot be treated like a state actor where the government's involvement was only to provide 'mere approval or acquiescence,' 'subtle encouragement,' or 'permission of a private choice.'" (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52–54 (1999))).

As to police transporting Castillo to CBI, the Court finds that this action neither demonstrates—nor significantly contributes to—a finding that CBI and Yuma County were jointly carrying out a "complex and deeply intertwined process." *See Jensen*, 222 F.3d at 753. While Yuma police happened to play a role in Castillo's commitment, that role was far too modest to rise to the level of deep intertwinement between the State and CBI.

Although the Court's analysis thus far has been focused on CBI and its employees generally, the *Rawson* court acknowledged that the state actor inquiry necessarily revolves around whether "the State is responsible for the *specific conduct* of which the plaintiff complains." *Id.* at 748 (emphasis omitted and added) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)); *Scianna*, 2025 WL 963600, at *9 ("The relevant inquiry as to whether a defendant's actions constituted state action thus hinges on the *specific alleged conduct and role of the defendant*, and requires a fact-intensive, totality of the circumstances approach." (emphasis added)). To be clear, the foregoing analysis applies with equal weight as to Defendant Andjelich. But Plaintiffs fail to specifically allege that the State was responsible for Defendant Andjelich's conduct.

Even if the alleged police or state court's involvement in this matter is indicative of state action, Plaintiffs do not allege that Defendant Andjelich was involved in either Castillo's transfer to CBI by police or in the acquisition of a court order for further evaluation. As noted, Plaintiffs allege Defendant Andjelich became involved in this matter after Castillo was committed. (Doc. 50 at 19.) Defendant Andjelich evaluated Castillo and ordered that she be transferred to inpatient status. (*Id.*) While Plaintiffs allege that Defendant Andjelich's evaluations were done in anticipation of a petition for court ordered evaluation, another CBI employee filed and completed that petition.[6] (*Id.*) Accordingly, Plaintiffs fail to allege that Defendant Andjelich was clothed in state law.

In sum, Plaintiffs only argue that CBI, and its employees, are state actors because: (1) CBI was hired by the Board; (2) Castillo was brought to CBI by law enforcement; and (3) CBI obtained a court order to continue evaluating Castillo. However, the foregoing is

---

[6] The Court does not suggest that the CBI employee who petitioned for the court order is a state actor.

- 13 -

insufficient to label the State significantly involved with Defendant Andjelich's actions and decision making. Accordingly, the Court **grants** Defendant Andjelich's Motion to Dismiss for Failure to State a Claim (Doc. 130).

### B. Defendant Michael's Motion to Dismiss

The Court next considers Defendant Michael's Motion to Dismiss for Failure to State a Claim (Doc. 180). Most of the foregoing legal framework and analysis equally applies to Defendant Michael's Motion. Thus, the Court similarly finds that Plaintiffs fail to plausibly allege that Defendant Michael is a state actor. In short, Defendant Michael is not alleged to have been "clothed with the authority of state law." *West*, 487 U.S. at 49. Accordingly, and for the following reasons, the Court **grants** Defendant Michael's Motion.

Plaintiffs allege Defendant Michael was an "Admitting Officer" at CBI under section 36-501 of the Arizona Revised Statutes. (*Id.* at 7.) Plaintiffs further allege that Defendant Michael designated Defendant Carrasco as an "Admitting Officer" knowing that she was otherwise unqualified. (*Id.*). Furthermore, Defendant Michael knew that Defendant Carrasco was issuing "pick up orders" in violation of Arizona law. (*Id.*). Accordingly, Plaintiff's contend that Defendant Michael improperly appointed and failed to oversee and supervise Defendant Carrasco despite knowing that she was violating Arizona law.

As relevant to the Motion, Plaintiffs allege that Defendant Michael violated Castillo's Fourth and Fourteenth Amendment rights by unconstitutionally searching and seizing her, depriving her of due process, and depriving her of familial association. (*Id.* at 18.) Plaintiffs similarly bring these claims under § 1983. (*Id.* at 5.) At bottom, Plaintiffs allege that Defendant Michael willfully and recklessly participated in depriving Castillo of her constitutional rights. (*Id.*)

For many of the same reasons described above, Plaintiffs similarly fail to sufficiently allege that Defendant Michael acted under the color of state law. Of course, the Court's previous analysis pertaining to whether CBI, in general, is a state actor equally applies to the determination of whether Defendant Michael, a CBI employee, is a state

actor. Again, the "relevant inquiry as to whether a defendant's actions constituted state action thus hinges on the *specific alleged conduct and role of the defendant*." *Scianna*, 2025 WL 963600, at *9 (emphasis added).

The primary difference between Defendant Michael and Defendant Andjelich is that Defendant Michael is alleged to have at least played some role in the decision to have police transport Castillo to CBI. Although, Plaintiffs allege that Defendant Carrasco was the one who submitted the order to have police transport Castillo. (Doc. 50 at 12.) Defendant Michael is alleged to have merely supervised Defendant Carrasco. (*Id.* at 18.) Nonetheless, the Court again finds that Plaintiffs fail to plausibly demonstrate that Defendant Michael and Yuma County where jointly carrying out a "complex and deeply intertwined process." *See Jensen*, 222 F.3d at 753.

Again, there is no allegation that the State was involved in Shelby's initial application to have Castillo admitted. Additionally, there is no allegation that the State was at all involved in CBI's decision regarding Castillo's evaluation. In short, a private citizen sought to have Castillo committed, who was evaluated by private employees working at a private hospital. For these reasons, and those previously mentioned, ordering a police escort pursuant to state law, at the behest of a private citizen, does little to show that the State played an outsized role in Castillo's commitment. Accordingly, the Court **grants** Defendant Michael's Motion to Dismiss for Failure to State a Claim (Doc. 180).

**IV. LEAVE TO AMEND**

Rule 15(a) requires that leave to amend be "freely give[n] when justice so requires." Leave to amend should not be denied unless "the proposed amendment either lacks merit or would not serve any purpose because to grant it would be futile in saving the plaintiff's suit." *Universal Mortg. Co. v. Prudential Ins. Co.*, 799 F.2d 458, 459 (9th Cir. 1986). Therefore, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). Because the defects described in

both Motions could be cured by amendment, the Court will give leave to amend. *Lopez*, 203 F.3d at 1130.

## IV.   CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED granting** Defendant Andjelich's Partial Motion to Dismiss for Failure to State a Claim (Doc. 130) with leave for Plaintiffs to amend their Complaint. The Court dismisses the FAC's "Fifth Claim" and "Eleventh Claim" as to Defendant Andjelich. If Plaintiffs so choose, they shall file an Amended Complaint no later than thirty (30) days after the date this Order is issued.

**IT IS FURTHER ORDERED granting** Defendant Michael's Motion to Dismiss for Failure to State a Claim (Doc. 180) with leave for Plaintiffs to amend their Complaint. If Plaintiffs so choose, they shall file an Amended Complaint no later than thirty (30) days after the date this Order is issued.

Dated this 8th day of October, 2025.

Honorable Susan M. Brnovich
United States District Judge